# LIDDLE | SHEETS | COULSON

## CLASS ACTION AND COMPLEX LITIGATION

975 E. Jefferson Avenue
Detroit, MI 48207-3101
www.LSCCounsel.com

Steven D. Liddle
Laura L. Sheets
Nicholas A. Coulson
--
Matthew Z. Robb
Lance Spitzig
D. Reed Solt

Telephone
(313) 392-0015
(800) 536-0045

Facsimile
(313) 392-0025

January 25, 2023

Via ECF

Hon. Paul G. Gardephe
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

**RE:** *David McCausland v. Gray Media Group, Inc.*, Case No. 1:22-cv-07539-PGG
**Supplemental Submission re: Pre-Motion Conference and Motion to Dismiss**

Dear Judge Gardephe,

As directed by the Court's January 12, 2023 Order ([Doc. 29]), this letter responds to Defendant's Supplemental Letter dated January 19, 2023([Doc. 31]) and a concern identified by the Court at the January 12 proceedings.

### 1. Definition of "Subscriber" Under the Video Privacy Protection Act:

As an initial matter, the Court raised the issue of whether Plaintiff's status as a "subscriber" under the VPPA might be subject to the concerns raised in *Austin-Spearman v. AMC Network Entm't LLC*, 98 F. Supp. 3d 662, 663 (S.D.N.Y. 2015). There, the court held that the plaintiff was not a subscriber for purposes of the VPPA because:

> Austin-Spearman, however, does not claim any such relationship with AMC in her complaint. According to the complaint, she did not pay AMC for the content on its free website, nor did she "sign up," register for an account, establish a user ID or profile, download an app or program, or take any action to associate herself with AMC.

1

*Id.* at 669. The court noted that "[e]xclusion of Austin-Spearman from the 'subscribers' intended by the statute is also supported by the two cases" that had, at the time, considered the definition under the VPPA.[1] *Id.* As a wrinkle, after filing her opposition

> Austin-Spearman informed the Court of a fact she deems relevant to her classification as a "subscriber" which, although evidently known at the time she filed her opposition papers, was inexplicably not shared with the Court or the defendant either during briefing or at oral argument. Specifically, Austin-Spearman now claims that she "registered for AMC's newsletter as it relates to the Walking Dead TV show, providing certain personal information, including her email address," and that she subsequently received promotional emails regarding the show, including a link to "unsubscribe" should she choose to do so. Having failed to plead any of these details in her complaint, Austin-Spearman now requests that we grant her leave to amend to add these new allegations rather than dismiss her complaint with prejudice.
>
> ...
>
> In particular, we note that Austin-Spearman's proposed amendment raises a host of troubling questions and implications, such as: whether a plaintiff can constitute a subscriber under the VPPA if she subscribes only to a portion of the provider's services that are distinct and set apart from its provision of videos; whether it is reasonable to read the statute as creating liability for a provider which itself collects data only from that distinct, non-video-related subscription; whether, if plaintiff can be deemed a subscriber purely on the basis of her newsletter subscription, she has consented to the privacy policy that one must accept before subscribing to AMC's newsletter, which makes it clear that AMC will collect data and allow third-party cookies; and whether such consent would serve to preclude her claims. Thus, while the proposed factual allegation raises an additional issue which should considered in evaluating whether she can now be deemed a "subscriber" and therefore cannot be dismissed as futile, it remains far from apparent that Austin-Spearman will ultimately be able to satisfy this or the numerous other requirements under the statute. We therefore reluctantly grant Austin-Spearman's request for leave to amend.

*Id.* at 671-72.

---

[1] The jurisprudence on this issue has developed substantially since then. For example, the First Circuit reversed a district court's holding requiring that to be a subscriber, a VPPA plaintiff must pay money or have a similar commitment to the defendant, holding that "[w]hile [the plaintiff] paid no money, access was not free of a commitment to provide consideration in the form of … information, which was of value to [the defendant]. *Yershov v. Gannett Satellite Info. Network, Inc.*, 820 F.3d 482, 489 (1st Cir. 2016); *see also* (*Belozerov v. Gannett Co.*, Civil Action No. 22-10838-NMG, 2022 U.S. Dist. LEXIS 229436, at *7 (D. Mass. Dec. 20, 2022)) (following *Yershov* in "declin[ing] to interpret the [VPPA] as incorporating monetary payment as a necessary element.").

While the potential concerns raised in *Austin-Spearman* never came before the court (and therefore its discussion of them constitutes dictum), the facts of that case are entirely dissimilar from the situation here. Here, Plaintiff is a subscriber to Defendant's website, not a mere portion relating to a specific subset of content. The Complaint ([Doc 1]) sets out the steps necessary to sign up for Defendant's newsletter, which is "customized" for each subscriber. (*Id.* ¶¶ 15-18). The button for completing this process states, unambiguously, "SUBSCRIBE!" (*Id.* ¶ 17). Subscribers who undertake this action then "receive recurring notifications and/or emails from Defendant" which among other things contain "links to articles and videos published" on Defendant's website. (*Id.* ¶ 18). In exchange for these things, Defendant surreptitiously receives Subscribers' PII. (*See generally Id.*). Plaintiff therefore alleges that he, unlike the *Austin-Spearman* plaintiff's allegations, "took [an] action to associate [him]self with" Defendant. *See Austin-Spearman*, 98 F. Supp. 3d at, 669.

**2. There is No Basis to Compel Arbitration or a Change of Venue.**

After first seeking dismissal, Defendant states its intent to move to compel arbitration or transfer venue, both based on clauses that were once, but are no longer, contained in its Websites' terms. Those terms state on their face that "Subject to Section 15.9 of this Agreement, Meredith reserves the right to modify this Agreement or its policies relating to the Services at any time, *effective upon posting of an updated version of this Agreement or any applicable Supplemental Terms of the applicable services.*" ([Doc. 32-1, 2-3). Apparently because Defendant's current terms state "[i]f you continue to use our Services, you are bound by this revised TOU[]" Defendant intends to move to compel barring the receipt of certain information from Plaintiff.

Regardless of whether Defendant's new terms became effective as of their posting or when a particular subscriber continues to visit the website, Plaintiff continues to subscribe to Defendant's website and therefore the currently operative terms apply to him for purposes of venue and the absence of an arbitration provision. Defendant cannot establish that Plaintiff is bound only by the prior Meredith terms.

**3. The VPPA Has Specific Requirements for Consent That are Strikingly Absent in This Case.**

Defendant's own letter acknowledges the VPPA's stringent consent requirements, then goes on to describe a scenario that clearly does not satisfy them. The disclosures do not relate to VPPA PII, are combined with all other privacy policy information (and therefore not distinct and separate from other legal or financial obligations) and are not given concurrently with an intended/requested disclosure or for a set period of time not to exceed two years. This argument cannot survive even a cursory reading of the statutory provision on which it is based.

**4. Defendant's Assertion That in This Context, the VPPA Does Not Apply to Media Companies' Websites, is Baseless.**

Defendant points to a DOJ filing in an unrelated VPPA case in a manor that obliterates all context. The DOJ's brief in *Stark v. Patreon, Inc.*, No. 3:22-cv-03131-JCS (N.D. Cal.) makes the point that the restrictions on sharing PII do not apply to the news media *when it functions as the media* — as in the media publishing Judge Bork's video rental history. It has no bearing on this setting, where the Video Service Provider happens to be a media company, but is not publishing PII as a matter of public concern or in exercise of its first amendment rights, but transmitting it to

3

a third party for unrelated business purposes. Media broadcasting companies not acting in the delivery of the news are not insulated from VPPA liability, indeed dozens of similar actions are pending against such entities. This is simply not a serious argument.

## CONCLUSION

Plaintiff has stated a claim under the VPPA and facts in support thereof, in full satisfaction of the Rule 8 pleading standard, and there is no operative agreement to arbitrate or litigate this case elsewhere. Defendant's anticipated motion to dismiss and/or compel is not supported by fact or law, and Defendant is liable to Plaintiff for violating the VPPA.

Sincerely,

Nicholas A. Coulson

CC: Counsel of Record via CM/ECF